```
1                    IN THE UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF WEST VIRGINIA
2                              AT CHARLESTON

3     ------------------------------x
                                    :
4     UNITED STATES OF AMERICA,      :
                                    :
5          v.                       :   CRIMINAL NO. 2:08-00105
                                    :
6     WILLIAM S. CHESTER, JR.,       :   OCTOBER 7, 2008
                                    :
7               Defendant.          :
      ------------------------------x
8

9                       TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JOHN T. COPENHAVER, JR.
10                    UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12    FOR THE UNITED STATES:      AUSA GERALD M. TITUS
                                  U.S. Attorney's Office
13                                P.O. Box 1713
                                  Charleston, WV  25336
14

15    FOR THE DEFENDANT:         AFPD EDWARD H. WEIS
                                  Federal Public Defender's Office
16                                300 Virginia Street East
                                  Charleston, WV  25301
17
      PROBATION OFFICER:         RUTH LOFTIS
18                                U.S. Probation Office
                                  300 Virginia Street East
19                                Charleston, WV  25301

20    COURT REPORTER:            BARBARA STEINKE, RMR
                                  Post Office Box 75025
21                                Charleston, WV  25375
                                  (304) 347-3151
22

23    These proceedings were reported with use of a stenographic
      machine and transcribed with use of computer-aided
24    transcription.

25
```

```
 1                 P R O C E E D I N G S          1:38 p.m.

 2          THE CLERK:  The case before the court is the *United

 3   States of America versus William Samuel Chester, Jr.,* Criminal

 4   Number 2:08-00105.  Would counsel note their appearance for the

 5   record, please.

 6          MR. TITUS:  Gerald Titus on behalf of the United

 7   States.

 8          MR. WEIS:  Edward Weis for William Samuel Chester, Jr.

 9   Mr. Chester is seated to my right.

10          THE COURT:  I believe the parties have been informed

11   that the court has entered an order denying the motion to

12   dismiss in this case.  That brief order was entered this

13   afternoon, and the parties will receive it doubtless in due

14   course.

15      Let me ask the purpose of this hearing, Mr. Titus.

16          MR. TITUS:  The purpose of this hearing is to allow the

17   defendant to change his previously entered plea of not guilty to

18   a plea of guilty.

19          THE COURT:  And that's to the single-count indictment

20   in the case?

21          MR. TITUS:  Excuse me, Your Honor?  I didn't hear you.

22          THE COURT:  Is that to the single-count indictment in

23   the case?

24          MR. TITUS:  Yes, Your Honor.

25          THE COURT:  And I think you said that was pursuant to
```

1  what I understand to be a conditional plea agreement?

2          MR. TITUS:  Yes, Your Honor.

3          THE COURT:  And is that your understanding as well,

4  Mr. Weis?

5          MR. WEIS:  Yes, it is, Your Honor.

6          THE CLERK:  Would the defendant please stand to be

7  sworn and raise your right hand.

8      (The defendant was sworn.)

9          **EXAMINATION OF WILLIAM SAMUEL CHESTER, JR.**

10  **BY THE COURT:**

11  Q.  Mr. Chester, state your full name, please.

12  A.  William Samuel Chester, Jr.

13  Q.  And what city do you live in?

14  A.  Right now I live in Huntington.

15  Q.  And how old are you?

16  A.  I'm sixty-two.

17  Q.  What's the extent of your education?

18  A.  I graduated from high school.

19  Q.  And do you read?

20  A.  Yes, sir.

21  Q.  And read well?

22  A.  Fairly well.

23  Q.  Do you write?

24  A.  Yes, sir.

25  Q.  And do you write fairly well?

1   A.  Yes, sir.

2   Q.  Have you at any time in the last few years been under the

3   treatment of a physician or anyone for a serious physical

4   illness or ailment of any kind?

5   A.  No, sir.

6   Q.  Have you ever had occasion to consult or be under the

7   treatment of a psychiatrist, physician, counselor, psychologist,

8   or anyone for a mental illness or emotional disorder of any

9   kind?

10  A.  No, sir.

11  Q.  Have you ever been under treatment for drug addiction?

12  A.  Well, yes, sir.

13  Q.  How long ago was that?

14  A.  Since October.

15  Q.  Are you saying last October?

16  A.  October of -- yes, sir.

17  Q.  A year ago.

18  A.  2007, yes, sir.

19  Q.  And did you complete that treatment?

20  A.  No, sir.  I'm still going.  It's Alcoholics Anonymous.

21  Q.  I see.  So that's an ongoing program.

22  A.  Yes, sir.

23  Q.  But you feel as though you are handling it successfully so

24  far?

25  A.  Yes, sir.

1  Q.  Now then, have you had any sedatives or medication or drugs

2  of any kind during the past 48 hours?

3  A.  No, sir.

4  Q.  Has the government made available to you a copy of the

5  indictment in this case?

6  A.  Yes, sir, it has.

7  Q.  Have you read it?

8  A.  Yes, sir.

9  Q.  Have you gone over it with your attorney, Mr. Weis, as well?

10  A.  Yes, sir.

11  Q.  Has he explained to you everything you didn't already

12  understand about it after you first read it?

13  A.  Yes, sir.

14  Q.  Now, notwithstanding your telling me that, I'm going to read

15  the indictment.  It's rather brief.

16      In the indictment, it is charged as follows.

17      1.  On or about October 10, 2007, at or near Institute,

18  Kanawha County, West Virginia, and within the Southern District

19  of West Virginia, defendant William Samuel Chester, Jr., did

20  knowingly possess firearms, that is, a Taurus, Model PT911, 9

21  millimeter pistol, and a loaded Remington, Model 870, 12 gauge

22  shotgun, in and affecting interstate commerce.

23      Do you understand what is charged in the first paragraph?

24  A.  Yes, sir.

25  Q.  And 2.  At the time defendant William Samuel Chester, Jr.,

1  possessed the aforesaid firearms, he had been convicted of a

2  misdemeanor crime of domestic violence as defined in Title 18,

3  United States Code, Section 921(a)(33), that is, convicted on or

4  about February 4, 2005, in the Magistrate Court of Kanawha

5  County of domestic assault and domestic battery in violation of

6  West Virginia Code, Sections 61-2-28(a) and (b).

7       Do you understand all that as well?

8  A.  Yes, sir.

9  Q.  And that all that is charged to be in violation of Title 18,

10 United States Code, Sections 922(g)(9) and 924(a)(2).

11      Do you understand that also?

12 A.  Yes, sir.

13 Q.  Let me note to you, sir, that if this case were to proceed

14 to trial, in order for you to stand convicted of the offense

15 charged against you in the indictment, it would be necessary

16 that the government prove to the satisfaction of this court and

17 a jury beyond a reasonable doubt each of the following three

18 essential elements of that offense, and they are as follows:

19      First, that you were convicted in a court of a misdemeanor

20 crime of domestic violence, that is, domestic assault and

21 domestic battery in violation of West Virginia Code, Section

22 61-2-28(a) and (b), as alleged in the indictment.

23      Do you understand the first element?

24 A.  Yes, sir.

25 Q.  And, secondly, that you thereafter knowingly possessed a

 1   firearm on or about October 10, 2007, at or near Institute,

 2   Kanawha County, West Virginia, as charged in the indictment.

 3        Do you understand that as well?

 4   A.  Yes, sir.

 5   Q.  And, lastly, that your possession of that firearm was in and

 6   affecting commerce.

 7        Do you understand that also?

 8   A.  Yes, sir.

 9   Q.  Now, let me ask whether or not you have discussed the

10   charges contained in that indictment thoroughly with your

11   attorney, Mr. Weis?

12   A.  Yes, sir, we have.

13   Q.  Did you tell him all the facts?

14   A.  Yes, sir.

15   Q.  Has he counseled and advised you as to the nature of the

16   offense with which you are charged in that indictment?

17   A.  Yes, sir.

18   Q.  Insofar as you can tell, has he also counseled and advised

19   you as to all possible defenses you may have to those charges?

20   A.  Yes, sir.

21   Q.  Do you fully understand then the nature of the charge set

22   out in the indictment?

23   A.  Yes, sir.

24   Q.  Are you ready to enter a plea to that charge?

25   A.  Excuse me?  I didn't understand.

1   Q.  Are you ready to enter a plea to that charge?

2   A.  Yes, sir.  Excuse me.

3   Q.  Now, just answer that yes or no at this point.

4   A.  Yes, sir.

5   Q.  Very good.

6          THE COURT:  The court understands that a plea agreement

7   has been entered into, and I'll ask, Mr. Titus, if you have the

8   original of that agreement, if I might see it, please.

9          MR. TITUS:  Yes, Your Honor.  May I approach?

10          THE COURT:  Please.

11   Q.  Mr. Chester, I have before me what appears to be a seven

12   page written plea agreement dated August 12, 2008.  It is

13   addressed to your attorney, Mr. Weis, and it's from the United

14   States Attorney, and signed on his behalf by Mr. Titus as

15   Assistant United States Attorney.  There is an eighth page that

16   is labeled, Stipulation of Facts, Plea Agreement Exhibit A, that

17   is attached to that plea agreement.

18       Is that the plea agreement that you read?

19   A.  Yes, sir, it is.

20   Q.  Have you been over this plea agreement thoroughly with your

21   attorney?

22   A.  Yes, sir, we have.

23   Q.  Has he explained to you everything you didn't already

24   understand about it after you first read it?

25   A.  Yes, sir.

1    Q.   Do you believe that you understand everything in it?

2    A.   I think I do, sir, yes.

3    Q.   Now, notwithstanding your telling me that, I'm going to ask

4    Mr. Titus to read this agreement into the record; and as he

5    does, you'll have the original of it before you, and you can

6    follow along with it before you, if you wish to do so, as he

7    reads it.  But in any event, I want you to listen very carefully

8    as he reads it.  If there is anything at all about it that you

9    don't understand, I want you to interrupt him right in the

10   middle of his reading of it, and we'll take it up then.  Do you

11   promise to do that?

12   A.   Yes, sir.

13         THE COURT:  Mr. Weis, could you hand the original of

14   this agreement to Mr. Chester, please.

15      Mr. Titus.

16         MR. TITUS:  Paragraph 1 provides the pending charges.

17   Mr. Chester is charged in a one-count indictment which charges

18   him with a violation of 18 United States Code, Sections

19   922(g)(9) and 924(a)(2), knowingly possessing firearms

20   subsequent to misdemeanor domestic violence conviction.

21      Paragraph 2 provides for the resolution of those charges.

22   Should the court deny his motion to dismiss indictment,

23   Mr. Chester will plead guilty to said one-count indictment,

24   which charges him with a violation of 18 United States Code,

25   Sections 922(g)(9) and 924(a)(2), knowingly possessing firearms

1    subsequent to misdemeanor domestic violence conviction.

2          Paragraph 3 sets forth the maximum potential penalty.  The

3    maximum penalty to which Mr. Chester will be exposed by virtue

4    of this guilty plea is as follows:

5          (a) Imprisonment for a period of ten years;

6          (b) A fine of 250,000, or twice the gross pecuniary gain or

7    twice the gross pecuniary loss resulting from defendant's

8    conduct, whichever is greater;

9          (c) A term of supervised release of three years;

10         (d) A mandatory special assessment of 100 dollars pursuant

11   to 18 United States Code, Section 3013; and

12         (e) An order of restitution pursuant to 18 United States

13   Code, Sections 3663 and 3664, or as otherwise set forth in this

14   plea agreement.

15              THE COURT:  Let me interrupt at this point and ask.

16   Mr. Chester, do you understand everything in this agreement down

17   to this point?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Anything at all about it that you don't

20   understand so far?

21              THE DEFENDANT:  No, sir.

22              THE COURT:  Has the $100 special assessment been paid?

23              MR. WEIS:  No, Your Honor.  However, he has --

24   Mr. Chester has with him a money order in that amount and will

25   deposit it with the clerk immediately after the proceedings are

1  concluded.

2          THE COURT:  And so, the money order is present to be

3  paid today.

4          MR. WEIS:  Yes, the money order is present in the

5  courtroom.

6          THE COURT:  All right.  That being the case, you

7  understand that if that special assessment weren't paid, that

8  the government could void this agreement.  Do you understand

9  that, do you?

10          THE DEFENDANT:  Yes, sir.  We have it right here.

11          THE COURT:  But it is going to be paid today.

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  So I think there's no need then to read

14  paragraph 4.

15      And, Mr. Chester, you may be seated during the balance of

16  the reading.

17          THE DEFENDANT:  Thank you.

18          MR. TITUS:  Thank you, Your Honor.

19      Paragraph 5 provides for the payment of monetary penalties.

20  Mr. Chester agrees not to object to the district court ordering

21  all monetary penalties, including the special assessment, fine,

22  court costs, and any restitution that does not exceed the amount

23  set forth in this plea agreement, to be due and payable in full

24  immediately and subject to immediate enforcement by the United

25  States.  So long as the monetary penalties are ordered to be due

1    and payable in full immediately, Mr. Chester further agrees not

2    to object to the district court imposing any schedule of

3    payments as merely a minimum schedule of payments and not the

4    only method, nor a limitation on the methods, available to the

5    United States to enforce the judgment.

6         Paragraph 6 discusses defendant's cooperation.  Mr. Chester

7    will be forthright and truthful with this office and other law

8    enforcement agencies with regard to all inquiries made pursuant

9    to this agreement, and will give signed, sworn statements and

10   grand jury and trial testimony upon request of the United

11   States.  In complying with this provision, Mr. Chester may have

12   counsel present except when appearing before a grand jury.

13        Paragraph 7 provides regarding use immunity.  Unless this

14   agreement becomes void due to a violation of any of its terms by

15   Mr. Chester, nothing contained in any statement or testimony

16   provided by him pursuant to this agreement, or any evidence

17   developed therefrom, will be used against him, directly or

18   indirectly, in any further criminal prosecutions or in

19   determining the applicable guideline range under the federal

20   sentencing guidelines.

21        Paragraph 8 discusses the limitations on immunity.  Nothing

22   contained in this agreement restricts the use of information

23   obtained by the United States from an independent, legitimate

24   source, separate and apart from any information and testimony

25   provided pursuant to this agreement, in determining the

1    applicable guideline range or in prosecuting Mr. Chester for any

2    violations of federal or state laws.  The United States reserves

3    the right to prosecute Mr. Chester for perjury or false

4    statement if such a situation should occur pursuant to this

5    agreement.

6        9.  Stipulation of Facts and Waiver of Federal Rule of

7    Evidence 410.  The United States and Mr. Chester stipulate and

8    agree that the facts comprising the offenses of conviction and

9    relevant conduct include the facts outlined in the Stipulation

10   of Facts, a copy of which is attached hereto as Plea Agreement

11   Exhibit A.  The stipulation of facts does not include all

12   relevant conduct.

13       THE COURT:  Before going on with the rest of that

14   paragraph numbered 9, I am going to ask that you go to the

15   attached Stipulation of Facts, being Plea Agreement Exhibit A,

16   and read it if you would, please.

17       MR. TITUS:  Stipulation of Facts, Plea Agreement

18   Exhibit A.  The United States and Mr. Chester stipulate and

19   agree that the facts comprising the offense of conviction in the

20   one-count indictment in the Southern District of West Virginia,

21   Criminal Number 2:08-00105, and the relevant conduct for that

22   offense, include the following:

23      On February 4, 2005, Mr. Chester was convicted of a

24   misdemeanor crime of domestic violence in the Magistrate Court

25   of Kanawha County.  On October 10, 2007, officers with the

1    Kanawha County Sheriff's Department located two firearms within

2    Mr. Chester's residence at 106 Howard Avenue, Institute, West

3    Virginia, 25064.  Officers located a Taurus, Model PT911, 9

4    millimeter pistol in Mr. Chester's bedroom, and a loaded

5    Remington, Model 870, 12 gauge shotgun in a pantry adjacent to

6    the kitchen.  Mr. Chester's residence is within the Southern

7    District of West Virginia.  Mr. Chester is the owner of the two

8    firearms.  Both firearms are functional and have traveled in or

9    affected interstate commerce.

10       Stipulated and agreed to, William Samuel Chester, Jr.,

11   defendant, and it's signed, dated August 13th of 2008; Edward H.

12   Weis, counsel for defendant, also signed August 13th of 2008;

13   and Gerald M. Titus III, Assistant United States Attorney, also

14   signed August 13th of 2008.

15            THE COURT:  And let me interrupt.  You understand the

16   stipulation of facts is an agreement by you that those are the

17   facts?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  But they are not all the facts, but that

20   which is agreed to is agreed to by you and the government as

21   being factual, correct?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  Thank you.

24       And please go back to the reading of paragraph 9.

25            MR. TITUS:  Mr. Chester agrees that if he withdraws

1    from this agreement, or this agreement is voided as a result of

2    a breach of its terms by him, and he is subsequently tried on

3    any of the charges in the indictment, the United States may use

4    and introduce the Stipulation of Facts in the United States case

5    in chief, in cross-examination of Mr. Chester or any of his

6    witnesses, or in rebuttal of any testimony introduced by

7    Mr. Chester or on his behalf.  Mr. Chester knowingly and

8    voluntarily waives, see *United States v. Mezzanatto*, 513 U.S.

9    196 (1995), any right he has pursuant to Federal Rule of

10   Evidence 410 that would prohibit such use of the Stipulation of

11   Facts.  If the court does not accept the plea agreement through

12   no fault of the defendant, or the court declares the agreement

13   void due to a breach of its terms by the United States, the

14   Stipulation of Facts cannot be used by the United States.

15        The United States and Mr. Chester understand and acknowledge

16   that the court is not bound by the Stipulation of Facts, and if

17   some or all of the Stipulation of Facts is not accepted by the

18   court, the parties will not have the right to withdraw from the

19   plea agreement.

20             THE COURT:  Thank you.

21        Let me interrupt again, and note to you, Mr. Chester, that

22   under the terms of this particular paragraph numbered 9, you not

23   only agree to those facts as they have been read into the

24   record, but you also agree that if you withdraw from this

25   agreement, or if this agreement is canceled or voided because of

1    any breach of its terms by you, that the government may later at

2    any trial on these charges introduce that Stipulation of Facts

3    as evidence in the case.  Do you understand that?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  And you waive any right that you would have

6    to preclude the government from doing so.  Do you understand

7    that as well?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Please go ahead.

10           MR. TITUS:  10.  Waiver of Appeal and Collateral

11   Attack.  The parties retain the right to seek appellate review

12   of the district court's determination of the sentencing

13   guideline range, if an objection is properly preserved.

14   Nonetheless, Mr. Chester knowingly and voluntarily waives his

15   right to seek appellate review of any sentence of imprisonment

16   or fine imposed by the district court on any other ground, so

17   long as that sentence is below or within the sentencing

18   guideline range determined by the district court prior to any

19   departure or variance.  Similarly, the United States waives its

20   right to seek appellate review of any sentence of imprisonment

21   or fine imposed by the district court on any other ground, so

22   long as that sentence is within or above the sentencing

23   guideline range determined by the district court prior to any

24   departure or variance.

25        Mr. Chester also knowingly and voluntarily waives the right

1  to challenge his guilty plea and his conviction resulting from

2  this plea agreement and any sentence imposed for the conviction

3  in any collateral attack, including, but not limited to, a

4  motion brought under 18 United States Code, Section 2255.

5       The waivers noted above shall not apply to a postconviction

6  collateral attack or direct appeal based on a claim of

7  ineffective assistance of counsel.

8            THE COURT:  Let me interrupt once more.  Mr. Chester,

9  do you understand what's meant by sentencing guidelines?

10           THE DEFENDANT:  Halfway.

11           THE COURT:  Well, that's probably at least a quarter

12 more than others.  I want to explain to you, and Mr. Weis has

13 probably already been over this with you, but one of the things

14 that the court will be doing in this case is to make a

15 determination of the advisory -- under the advisory United

16 States Sentencing Guidelines of what the advisory guideline

17 range is.  Now, the court will note to you that that's an

18 important part of the sentencing process in this case, and

19 although the court is not bound by that advisory range, the

20 court will be paying close attention to it in determining what

21 sentence to impose.

22      What the sentencing guidelines have the court doing is to

23 take into account a number of factors that make up the

24 sentencing guidelines; and once that is determined, then the

25 advisory guideline range is suggested and the court reviews it

1    and considers it.  What paragraph 9 is saying is that you

2    forever waive your right to appeal any sentence that the court

3    imposes that is within that guideline range determined by the

4    court or below it.

5         Do you understand that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  And in addition to that, you forever waive

8    your right to even appeal the court's determination of the

9    sentencing guideline range, unless you've made objection to it

10   by the time of the sentencing hearing or during the sentencing

11   hearing.  Do you understand that?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  And do you further understand that under

14   this provision, you also not only waive any right you have to

15   appeal your sentence under those circumstances that I've just

16   related to you, but you also waive your right to appeal your

17   conviction in this case, and the only exception to that is that

18   you may possibly be able to attack the sentence or the

19   conviction on the basis of ineffective assistance of counsel.

20   Other than that, you effectively waive your rights of appeal.

21        In addition to that, quite apart from appeal, there is

22   another way to attack a sentence or a conviction, and it's by

23   what is a so-called collateral attack, sometimes called a habeas

24   proceeding, and sometimes called by those of us who deal with

25   the matter on a daily basis as a 2255 proceeding because that's

1    the section under which it comes.  What I am saying to you now

2    is that quite apart from an appeal, which would be taken

3    directly as soon as I have completed ruling in your case, later

4    on, you may be able to attack your sentence by the so-called

5    collateral appeal or habeas proceeding or 2255 proceeding; and

6    as a practical matter, you get one chance at that, too, if at

7    all, but you waive your right to do so, once again, except on

8    the basis of ineffective assistance of counsel.

9         Do you understand largely what I've told you?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  And do you have any questions about it?

12             THE DEFENDANT:  No, sir.  We talked about it, but, you

13    know.

14             THE COURT:  That is, we being you and Mr. Weis?  We

15    being you and Mr. Weis?

16             THE DEFENDANT:  Yeah, Mr. Weis, yes.

17             THE COURT:  So you've already had some discussion with

18    him about it.

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Very good.

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Any other questions about it?

23             THE DEFENDANT:  No, sir.  I'm better informed now.

24    Thank you.

25             THE COURT:  Thank you.  Please go ahead.

1          MR. TITUS:  11.  Conditional Plea.  Notwithstanding the

2     waiver of appeal provision of paragraph number 10 of this plea

3     agreement, pursuant to Federal Rule of Criminal Procedure

4     11(a)(2), Mr. Chester reserves the right, in a timely appeal

5     from the final judgment in this case, to have the United States

6     Court of Appeals for the Fourth Circuit review the district

7     court's memorandum opinion and order entered on today's date

8     denying defendant's motion to dismiss indictment, in which the

9     only issue raised by defendant, and the only issue to be raised

10    by defendant on appeal, in addition to sentencing issues allowed

11    by paragraph 10 of this agreement, is whether 18 United States

12    Code, Section 922(g)(9) is unconstitutional, either on its face

13    or as applied to Mr. Chester in this prosecution, in light of

14    *District of Columbia v. Heller*, 128 Supreme Court, 2783 (2008).

15    If Mr. Chester prevails on appeal, he may withdraw his plea

16    under this agreement, and this agreement shall be void.

17         THE COURT:  Now, let me interrupt again.  There is one

18    exception to all I've told you about your right to appeal, and

19    that's just been read to you, and as you are quite well aware,

20    you retained the right to appeal the court's ruling on which it

21    has entered an order today that has to do with the

22    constitutionality of the act under which you are being

23    prosecuted and as applied to your facts in your case, being the

24    Second Amendment right to bear arms question that is dealt with

25    in the *Heller* opinion that is noted here in that paragraph.  You

1  retain, of course, the right to appeal on that ground.  And you

2  understand that, too.

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Please go ahead.

5          MR. TITUS:  12.  Waiver of Freedom of Information Act

6  and Privacy Right.  Mr. Chester knowingly and voluntarily waives

7  all rights, whether asserted directly or by a representative, to

8  request or receive from any department or agency of the United

9  States any records pertaining to the investigation or

10  prosecution of this case, including, without any limitation, any

11  records that may be sought under the Freedom of Information Act,

12  FOIA, 5 United States Code, Section 552, or the Privacy Act of

13  1974, 5 United States Code, Section 552a, following final

14  disposition.

15          THE COURT:  Let me note as well.  With respect to

16  paragraph 12, another waiver, and there you understand you waive

17  all rights that you have to request or receive any records from

18  any department or agency of the United States pertaining to the

19  prosecution or investigation of this case, and you make that

20  waiver under any statute or constitutional provisions, except

21  that there is specifically listed here two of them.  Those two

22  are what is called the Freedom of Information Act, sometimes

23  called FOIA; the other is the Privacy Act of 1974.  You waive

24  your right specifically under those two acts.  But you also

25  waive it under every other basis that you might have had for

1    obtaining those records.  Do you understand that?

2          MR. WEIS:  Your Honor, this is a matter which we

3    discussed before, and I informed Mr. Chester that this waiver

4    does not include what would otherwise be public records of this

5    court.  In other words, he still has the right to get records

6    which are public and lodged with the clerk of this court, since

7    he does not have to use FOIA or other special means to get them.

8          THE COURT:  That would be true.

9          THE DEFENDANT:  I understand that then, yes, sir.

10          THE COURT:  And you may proceed.

11          MR. TITUS:  13.  Waiver of Ownership Interest.

12    Mr. Chester hereby waives any ownership interest he may have in

13    the Taurus, Model PT911, 9 millimeter pistol, and the Remington,

14    Model 870, 12 gauge shotgun, set forth in the indictment, and

15    agrees not to challenge any lawful disposition of them or

16    destruction of the Taurus, Model PT911, 9 millimeter pistol, and

17    the Remington, Model 870, 12 gauge shotgun, by law enforcement

18    authorities.  Should Mr. Chester make a direct appeal to the

19    United States Court of Appeals for the Fourth Circuit pursuant

20    to paragraph 11 of this agreement, law enforcement authorities

21    will not dispose of or destroy the Taurus, Model PT8911, 9

22    millimeter pistol, and the Remington, Model 870, 12 gauge

23    shotgun, while such an appeal is pending.

24          THE COURT:  I take it that it is understood by the

25    parties then that if Mr. Chester's appeal would be successful

1    and his conviction in this case would be set aside, that he

2    would then be able to obtain those two firearms.

3              MR. WEIS:  Not necessarily, Your Honor, because there's

4    still a question of whether or not state law prohibits his

5    possession.

6              THE COURT:  Pardon me?

7              MR. WEIS:  Not necessarily because state law may still

8    prohibit his possession.  However, he would be able to assign

9    them to a licensed firearms dealer, so he basically retains the

10   property right in them.

11             THE COURT:  Yes, and it wouldn't necessarily be limited

12   to assigning them to a firearms dealer, I take it.

13             MR. WEIS:  That's correct.  He could give them to

14   somebody.  I just want to make clear we don't have any intention

15   of violating a state law prohibition against his possession.

16             THE COURT:  I understand that, but the point is that he

17   can get them back, even though he still would not be able to

18   lawfully possess them by virtue of state law.

19             MR. WEIS:  That is correct.

20             THE COURT:  And that's understood, I take it.

21             THE DEFENDANT:  Yes, sir.

22             MR. TITUS:  Yes, Your Honor.

23             THE COURT:  Please go ahead.

24             MR. TITUS:  14.  Final Disposition.  The matter of

25   sentencing is within the sole discretion of the court.  The

1   United States has made no representations or promises as to a

2   specific sentence.  The United States reserves the right to:

3       (a) Inform the probation office and the court of all

4   relevant facts and conduct;

5       (b) Present evidence and argument relative -- relevant to

6   the factors enumerated in 18 United States Code, Section

7   3553(a);

8       (c) Respond to questions raised by the court;

9       (d) Correct inaccuracies or inadequacies in the presentence

10  report;

11      (e) Respond to statements made to the court by or on behalf

12  of Mr. Chester;

13      (f) Advise the court concerning the nature and extent of

14  Mr. Chester's cooperation; and

15      (g) Address the court regarding the issue of Mr. Chester's

16  acceptance of responsibility.

17      15.  Voiding of Agreement.  If either the United States or

18  Mr. Chester violates the terms of this agreement, the other

19  party will have the right to void this agreement.  If the court

20  refuses to accept this agreement, it shall be void.

21      16.  Entirety of Agreement.  This written agreement

22  constitutes the entire agreement between the United States and

23  Mr. Chester in this matter.  There are no agreements,

24  understandings, or recommendations as to any other pending or

25  future charges against Mr. Chester in any court other than the

1    United States District Court for the Southern District of West

2    Virginia.

3        Acknowledged and agreed to on behalf of the United States,

4    Charles T. Miller, United States Attorney, by Gerald M. Titus,

5    III, Assistant United States Attorney.

6        And the agreement continues with a notation on the bottom of

7    the page:  I hereby acknowledge by my initials at the bottom of

8    each page of the foregoing pages and by my signature on the last

9    page of this seven-page agreement, that I have read and

10   carefully discussed every part of it with my attorney, that I

11   understand the terms of this agreement, and that I voluntarily

12   agree to those terms and conditions set forth in the agreement.

13   I further acknowledge that my attorney has advised me of my

14   rights, possible defenses, the sentencing guideline provisions,

15   and the consequences of entering into this agreement; that no

16   promises or inducements have been made to me other than those in

17   this agreement; and that no one has threatened me or forced me

18   in any way to enter into this agreement.  Finally, I am

19   satisfied with the representation of my attorney in this matter.

20       And it is signed by William Samuel Chester, Jr., and Edward

21   H. Weis, both on August 13th of 2008.

22           THE COURT:  Thank you.

23   BY THE COURT:

24   Q.  Mr. Chester, do you understand everything in that agreement?

25   A.  Yes, sir.

1    Q.   Anything about it that you don't understand?

2    A.   No, sir.

3    Q.   Did you approve of that agreement when it was reached?

4    A.   Pardon me?

5    Q.   When it was presented to you by Mr. Weis after he received

6    it from the government attorney, did you approve of the

7    agreement?

8    A.   Yes, sir.

9    Q.   And did you approve it when you signed it?

10   A.   Yes, sir.

11   Q.   Do you approve of it now?

12   A.   Yes, sir.

13   Q.   Is that your signature at the foot of the sixth page of the

14   agreement and the -- I should say, at the foot of the seventh

15   page of the agreement and the foot of the stipulation?

16   A.   Yes, sir, it is.

17   Q.   And are those your initials at the foot of the first six

18   pages?

19   A.   Yes, sir, they are.

20        THE COURT:  Mr. Weis, if you would hand the original of

21   that agreement to the clerk for filing, please.

22   Q.   Mr. Chester, what then is your plea to the single-count

23   indictment in this case?

24   A.   Your Honor, I plead guilty.

25   Q.   Before I accept your plea of guilty, I want to make certain

1   that you understand a number of things in connection with your

2   plea, the charges against you, and your constitutional rights.

3       First of all, an indictment in the case, that is, the

4   indictment in this case is only a formal charge which informs

5   you of the offense with which you are charged and serves to

6   bring you into court to answer that charge.  It is not any

7   evidence whatever of guilt.  Do you understand that?

8   A.  Yes, sir.

9   Q.  Do you also understand that you are entitled to the

10  assistance of a lawyer at every stage of these proceedings,

11  including trial should you wish to go to trial?

12  A.  Yes, sir, I understand that.

13  Q.  Do you further understand that inasmuch as you are without

14  funds with which to engage an attorney, the Federal Public

15  Defender has been appointed to represent you, and Mr. Weis will

16  be available to represent you at every stage of these

17  proceedings, including trial should you wish to go to trial,

18  without any expense whatever to you?

19  A.  Yes, sir.

20  Q.  And do you also understand that the costs of these

21  proceedings will otherwise be entirely at the expense of the

22  United States as well?

23  A.  Yes, sir.

24  Q.  Do you further understand that if you should instead enter a

25  plea of not guilty, that you have the right to a speedy and

1    public trial by jury, you have the right to be confronted by the

2    government's witnesses and to cross-examine them, you have the

3    right to use the process of this court to compel witnesses to

4    come in and testify on your behalf, and you are presumed to be

5    innocent of these charges until proven guilty beyond a

6    reasonable doubt?  Do you understand all that?

7    A.  Yes, sir.

8    Q.  Do you further understand that if instead you did plead not

9    guilty and went to trial, at that trial you need not take the

10   witness stand?

11   A.  Yes, sir.

12   Q.  Do you further understand that if you do go to trial and if

13   you chose not to testify, that fact would create no inference or

14   presumption of guilt, and the jury would be so instructed,

15   since, as I've already informed you, you are presumed to be

16   innocent of these charges until proven guilty beyond a

17   reasonable doubt?

18   A.  Yes, sir.

19   Q.  Do you understand that?  Do you further understand that if

20   you did plead not guilty, at the trial it would be necessary

21   that the government come forward with witnesses to prove these

22   charges against you beyond a reasonable doubt?

23   A.  Yes, sir.

24   Q.  Do you further understand that by entering a plea of guilty,

25   you waive your right to require the government to prove these

1  charges against you beyond a reasonable doubt, and you waive

2  your constitutional rights the court is telling you about?

3  A.  Yes, sir.

4  Q.  In particular, you waive your constitutional right against

5  self-incrimination with respect to the offense to which you've

6  pled guilty as set forth in the indictment.

7  A.  Yes, sir.

8  Q.  Do you further understand that if the court accepts your

9  plea of guilty, there will not be a further trial of any kind,

10  so that by pleading guilty, you waive your right to trial,

11  including your right to trial by jury?

12  A.  Yes, sir.

13  Q.  Do you also understand that the court does intend to

14  question you, under oath, on the record, and in the presence of

15  your attorney, about the offense to which you've pled guilty;

16  and if you fail to answer those questions truthfully, you may

17  later be prosecuted for perjury or false swearing on account of

18  that failure?  Do you understand that?

19  A.  Yes, sir.

20  Q.  Do you further understand that by pleading guilty, the court

21  may impose the same penalty as if you'd stood trial and been

22  convicted of the offense charged against you in the indictment

23  in this case?  Do you understand all that?

24  A.  Yes, sir.

25  Q.  In that connection, the maximum punishment for the offense

1    to which you've pled guilty is imprisonment for as long as ten

2    years; a fine of as much as $250,000; a term of supervised

3    release of as long as three years; a $100 special assessment

4    that you are going to pay today; and restitution as set forth in

5    the plea agreement.  Do you understand all that?

6    A.  Yes, sir.

7    Q.  Now then, I've indicated to you before that the court will

8    be taking into account, among other things, the advisory United

9    States Sentencing Guidelines in this case, and I want to go over

10   that with you.  The court would explain first to you, though,

11   about supervised release.  I've told you that the maximum term

12   is three years, and that's probably what it will be, if the

13   court imposes a term of imprisonment.  And what that means is

14   this.

15       In addition to any term of imprisonment that you serve in

16   this case, you'll be on supervised release for a period of three

17   years in all likelihood, and that term of supervised release

18   will be subject to various terms and conditions, some of which

19   may limit your freedom to some limited extent.  The important

20   thing about that is this.  If you violated any of those terms

21   and conditions, what that would mean is that your supervised

22   release could be revoked; and if it were revoked, that means you

23   could be sent back to prison to serve a further term of

24   imprisonment which could be as long as another two years; and

25   that, of course, would be in addition to any term of

1   imprisonment that you would already have served for this

2   offense.  And at that time, you could be placed on supervised

3   release again; and if you violated that second term of

4   supervised release, once again, you would be subject to a term

5   of imprisonment of as long as two years.  And if at that time

6   the court sentenced you to less than two years, you could be

7   placed on supervised release still again.  But for all the

8   violations of all the terms of supervised release put together,

9   you could not be sentenced to more than a total of four years

10   for supervised release violations.  Do you understand all that?

11   A.  Yes, sir.

12   Q.  Now then, with respect to the advisory sentencing

13   guidelines, in determining what the advisory sentencing

14   guideline range is, a number of factors are taken into account.

15   They include such things as your role in the offense to which

16   you've pled guilty, your criminal history, whether you've

17   accepted responsibility for your misconduct, whether you have

18   obstructed justice in any way, whether or not you are a career

19   criminal or make your livelihood from crime, and quite a number

20   of other factors, and I'm not going into all those with you

21   today, but if you have any questions about what the other

22   factors might be, I'll be happy to undertake to answer them.  Do

23   you have any questions?

24   A.  No, sir.

25   Q.  Now then, let me note to you that there isn't anyone right

 1    now who can tell you exactly where your advisory sentencing
 2    guideline range will fall –- not your attorney, nor the attorney
 3    for the government, nor the court.  That will not become clear
 4    until after the probation department has made its presentence
 5    investigation in the case and has filed its report, and the
 6    parties have had a chance to go over it and object to it and try
 7    to work those objections out; and to the extent that objections
 8    remain, the court will pass upon them at sentencing; and at
 9    sentencing, the court may raise matters of its own, including
10    those very same things the parties had already tried to work out
11    by agreement.  And so, until we reach the point where the court
12    has ruled on all those matters at sentencing, it will not become
13    clear exactly where your advisory sentencing guideline range
14    will fall.  Do you understand that?
15    A.  Yes, sir.
16    Q.  Now, do you also understand that that is, as I've already
17    told you, an advisory guideline range.  The court is not bound
18    by it, but the court will be giving it close consideration in
19    determining the sentence to impose in the case.  Do you
20    understand all that, do you?
21    A.  Yes, sir.
22    Q.  Let me note to you that the court is not bound by your plea
23    agreement, but should the court not accept it, you may withdraw
24    your plea of guilty.  Do you understand that?
25    A.  Yes, sir.

 1   Q.  Mr. Chester, you have the right to plead not guilty; and if
 2   there is any doubt whatever in your mind as to whether you are
 3   guilty or not of the charges in this case, the court would urge
 4   you to plead not guilty.  What is your wish?
 5   A.  I wish to plead guilty.
 6   Q.  Other than your written plea agreement filed and read here
 7   today, have you been made any promises by anyone of leniency or
 8   light sentence or probation?
 9   A.  No, sir.
10   Q.  Have you been threatened by anyone in any way, or has anyone
11   used any means of intimidation or coercion or pressure to induce
12   you to enter a plea of guilty against your will?
13   A.  No, sir.
14   Q.  Are you satisfied with your attorney, Mr. Weis, in this
15   case?
16   A.  Yes, sir.
17   Q.  Do you feel he has represented you fully and fairly?
18   A.  I didn't understand that one, sir.
19   Q.  Do you believe that he has represented you fully and fairly?
20   A.  Yes, sir.
21   Q.  And has he spent a good deal of time with you developing
22   this case?
23   A.  Yes.
24   Q.  Now, back to your written plea agreement filed and read here
25   today.  Is that the entire agreement between you and the United

 1  States?

 2  A.  Yes, sir, it is.

 3  Q.  Are there any side agreements of any kind?

 4  A.  No, sir, there's not.

 5  Q.  Do you then offer to enter a plea of guilty voluntarily and

 6  of your own free will to the single-count indictment in this

 7  case?

 8  A.  Yes, sir, I do.

 9  Q.  Do you do that with the full understanding that you'll be

10  waiving your constitutional rights the court has told you about,

11  including your right to a fair and speedy trial by jury?

12  A.  Yes, sir.

13  Q.  And do you do it as well with the full knowledge of the

14  consequences of your plea which --

15  A.  Yes.

16  Q.  -- includes the possible maximum penalty that the court has

17  told you about in this case and is also set forth in your plea

18  agreement?

19  A.  Yes, sir.

20  Q.  Let me ask whether or not you waive further reading of the

21  indictment at this time in open court, or do you wish to have it

22  read once more before your formal written plea is taken?

23  A.  I waive that right.

24          THE COURT:  The clerk will take the defendant's plea in

25  writing.

1          THE CLERK:  Mr. Chester, if you would please listen as

2   I read.

3      *United States of America versus William Samuel Chester, Jr.*,

4   Criminal Number 2:08-00105.

5      Guilty Plea.

6      In the presence of Edward H. Weis, my counsel, who has fully

7   explained the charge contained in the indictment against me, and

8   having received a copy of the indictment from the United States

9   Attorney before being called upon to plead, I hereby plead

10  guilty to the one-count indictment.

11     (Pause.)

12         THE COURT:  The defendant's written plea of guilty to

13  the single-count indictment in this case, having been signed by

14  him in the presence of the court, is received and filed.

15  BY THE COURT:

16  Q.  Mr. Chester, tell me in your own words what it is that you

17  did as more fully charged in the indictment in this case.

18  A.  Well, I was in possession of a 9 millimeter handgun and a

19  Remington 12 gauge shotgun, and in violation of the law.  I was

20  a prohibited person in possession of the firearm.

21  Q.  And when did that occur?

22  A.  October, around October of 2007.

23  Q.  About a year ago?

24  A.  October 10, 2007, I think that was the date.

25  Q.  As I say, it was about a year ago?

1   A.  Yes, sir.

2   Q.  And where did it occur?

3   A.  At my ex-residence, 106 Howard Avenue in Dunbar, West

4   Virginia.

5   Q.  And at that time, as you indicated, you had been convicted

6   of the misdemeanor offense of domestic violence, being in this

7   case a violation of the two West Virginia statutes that are

8   cited in the indictment; one for domestic assault, one for

9   domestic battery.

10  A.  That's correct.

11  Q.  And those convictions were in Magistrate Court in Kanawha

12  County in 2005; is that right?

13  A.  2004, I believe, Your Honor.

14  Q.  I see.

15  A.  I think.  Yeah, I'm not sure.

16  Q.  But was about 2004 or '05, as the case may be.

17  A.  Yes, sir.

18  Q.  Thank you.

19          THE COURT:  And with respect to the weapons, did they

20  travel in interstate commerce?

21          THE DEFENDANT:  (No response.)

22          MR. TITUS:  Yes, Your Honor, both were manufactured

23  outside of West Virginia, and, therefore, must have traveled in

24  interstate commerce.  That opinion was rendered by a special

25  agent with the Bureau of Alcohol, Tobacco & Firearms.

1          THE COURT:  And they were operable?

2          MR. TITUS:  Both were test fired and found to be

3    functional firearms.

4          THE COURT:  And I take it the parties are in agreement?

5          MR. WEIS:  Yes, Your Honor.

6          THE COURT:  And does the defendant have anything

7    further with respect to the factual basis for the plea?

8          MR. WEIS:  No, Your Honor.

9          THE COURT:  And does the government?

10         MR. TITUS:  No, Your Honor.

11   BY THE COURT:

12   Q.  I'll ask you then, Mr. Chester.  Did you do the acts to

13   which you've pled guilty as more fully set forth in the

14   indictment in this case?

15   A.  Say that again, sir?

16   Q.  Did you do the acts to which you've pled guilty --

17   A.  Yes, sir.

18   Q.  -- as more fully set forth in the indictment?

19   A.  Yes, sir, they were in my possession.  They belonged to me.

20   Q.  And they were knowingly in your possession.

21   A.  Yes, sir.

22   Q.  At the time you did those acts, did you know and understand

23   and intend what you were doing?

24   A.  Well, I didn't know I was supposed to be in possession, I

25   wasn't allowed to have them, I didn't know that part, no, sir.

1   Q.  Well, is it the case that, first of all, you knew you had

2   been convicted of the domestic assault and domestic battery back

3   in Magistrate Court in Kanawha County in either 2004 or 2005?

4   A.  Right, I knew that, yes.

5   Q.  And you knew you were in possession of the Taurus 9

6   millimeter pistol and the Remington shotgun.

7   A.  Yes, sir.

8   Q.  Are you telling me that you didn't know that it was an

9   offense for one guilty of a misdemeanor to be in possession of

10  those firearms?

11  A.  No, sir, I didn't know that.

12  Q.  That's what you didn't know.

13  A.  That's what I didn't know.

14  Q.  But you knew everything else.

15  A.  I knew everything else, yes, sir.

16  Q.  And so, is it fair to say that except for not knowing that

17  it was impermissible for you to be in possession of those

18  weapons because of your misdemeanor conviction of domestic

19  violence, except for that, did you know and understand and

20  intend what you were doing?

21  A.  Yes, sir.

22  Q.  Are you pleading guilty then because you are, in fact,

23  guilty of that charged in the indictment, save for your

24  contention that this is an unconstitutional application of the

25  statute in your case?

1  A.  Yes, sir.  I mean, they were in my possession, so, yes, sir.

2  Q.  All right.  Do you understand all of the proceedings that

3  have taken place?

4  A.  Yes, sir.

5  Q.  And do you wish to go forward with your plea of guilty?

6  A.  Yes, sir.

7         THE COURT:  The court accepts and approves the plea

8  agreement, and finds that that agreement adequately protects the

9  rights of the defendant and is in the interests of justice.

10     The court finds that there is a factual basis for the plea,

11  and it is entered freely and voluntarily, and with the full

12  knowledge of the consequences of the plea, including the

13  possible penalty that the court may in this case impose.

14     The court accepts your plea of guilty, sir, and upon your

15  plea of guilty, it is adjudged by the court that you are guilty

16  of the charge contained in the indictment, and you stand

17  convicted of one violation of Title 18, United States Code,

18  Sections 922(g)(9) and 924(a)(2).

19     The court directs a presentence investigation by the

20  probation department of this court, and continues your case for

21  sentencing to January 7, 2009, at 1:30 in the afternoon.

22     I will ask if there is a pretrial services report.

23     You may be seated.

24     (Pause.)

25         THE COURT:  The defendant, as I understand it, is

1  released now on a 10,000 dollar unsecured bond, and I would ask

2  whether you've been in custody at any time; and if so, for what

3  length on these current charges that are before the court today.

4           MR. WEIS:  My recollection is that he has not been in

5  custody.  No, he has not been in custody.  It was a detention

6  motion, but it was denied and he has been on bond since.

7           THE COURT:  Was he in state custody for the matter for

8  which the officers were investigating at the time they

9  discovered the presence of the firearms?

10          MR. WEIS:  He was in custody at one point in South

11 Central Regional Jail for a short --

12          THE COURT:  Was that for a day or two?

13          THE DEFENDANT:  Seven days.

14          THE COURT:  Seven days.

15          THE DEFENDANT:  Yes.

16          THE COURT:  Now then, what is the status of your

17 relationship with your wife?

18          THE DEFENDANT:  We are divorced, Your Honor.

19          THE COURT:  When were you divorced?

20          THE DEFENDANT:  Well, we had the hearing two weeks ago,

21 and we got to work out the financial details, but the divorce --

22          THE COURT:  You say you have yet to work out the

23 financial details?

24          THE DEFENDANT:  No, sir, we haven't.

25          THE COURT:  You have done that or not?

1              THE DEFENDANT:  We have not, have not.

2              THE COURT:  Does that include the home?

3              THE DEFENDANT:  Yes, sir, part of it.

4              THE COURT:  And are you represented by an attorney?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Is she as well?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  And so, are you working with each other

9       through your attorneys?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  And who is living in the home?

12             THE DEFENDANT:  She is.

13             THE COURT:  And that's why you moved from Dunbar to

14      Huntington?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  How long have you been in Huntington now?

17             THE DEFENDANT:  About a year.

18             THE COURT:  You started on the AA program about a year

19      ago.  Was that immediately following this incident?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  And so, that year started October the 7th

22      exactly last year.

23             THE DEFENDANT:  I don't know exactly October 7th.  It

24      was after I met with my probation officer, Danita Miller.

25             MR. WEIS:  That would have been in May, Your Honor.

1            THE COURT:  I see.  Did you not start the program until

2       May?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  I thought you'd indicated to me that you

5       had been on this program since last October.

6            THE DEFENDANT:  No, sir, that was a mistake on my part.

7       I'm sorry.

8            THE COURT:  And so, you've been on the program since

9       May.

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  And that's once you came in to see the

12       probation officer in this case.

13            THE DEFENDANT:  Yes, sir.  When she told me what I had

14       to do to terms of my parole is when I started doing whatever she

15       told me to do.

16            THE COURT:  Now, you are retired, as I understand it.

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  And are you engaged in any occupation at

19       all now?

20            THE DEFENDANT:  No, sir, not right now, no, sir.

21            THE COURT:  Since you have been on bond, have you had

22       or encountered any difficulty in retaining, that is, in

23       observing and complying with the terms of your release, one of

24       which was that you not use alcohol to excess?  Have you had any

25       difficulty with that one?

United States v. William Chester                    43

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Have you used alcohol at all?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Have you abstained completely?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And so, you are in compliance with the

7    provision which states that you are to refrain from any use of

8    alcohol.

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And although that's not quite plain, I am

11   going to revise that.  The way it reads now is refrain from any

12   excessive use of alcohol, and the court is going to make it that

13   you refrain from any use of alcohol.

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And --

16          THE DEFENDANT:  Well, I thought it was blacked out --

17   excuse me, it was blacked out.  She had no alcohol on there, I

18   thought.

19          THE COURT:  What was probably intended was not

20   effectively carried out.

21          THE DEFENDANT:  Okay.

22          THE COURT:  And so, it reads as I quoted it to you.

23          THE DEFENDANT:  Okay, I'm sorry.

24          THE COURT:  So at any rate, the provision now will read

25   in accordance with what you have understood it to be anyway.

1          THE DEFENDANT:  Yes.

2          THE COURT:  And that is, you not use any alcohol.

3          THE DEFENDANT:  Yes.

4          THE COURT:  Let me ask the government whether it has a

5     recommendation as to bond.

6          MR. TITUS:  Your Honor, the United States would not

7     object to the defendant's release on the same conditions that

8     have been in place.

9          THE COURT:  Let me ask the probation officer whether in

10    view of the history of this matter since May, the probation

11    officer would have any different recommendation at this stage.

12         THE PROBATION OFFICER:  Your Honor, I apologize, but I

13    haven't had a chance to really look at the pretrial services

14    report as it was not made available to me, but based on just the

15    conversation between the court and the defendant, it appears as

16    if he is doing well on bond at this point.  There hasn't been

17    any infractions and he is not drinking.

18         THE COURT:  Very good.

19         MR. WEIS:  Your Honor, I informed Ms. Danita Miller,

20    the probation officer, of the hearing, and she said she was

21    going to attempt to fax a report to you noting that there had

22    been no violations.

23         THE COURT:  I have the report, and it states a

24    recommendation that the defendant be continued on a previously

25    executed bond, and states that, the defendant has met conditions

1  of release; yes is checked.

2      And the court will permit the defendant to remain on the

3  same bond with that one revision that I have been making with

4  respect to the use of alcohol, and the bond will now provide

5  that you abstain completely from the use of alcohol; and will

6  further provide that you continue with the AA program that you

7  are now observing.  And I would ask you, what sessions do you

8  have under that program?  And I take it they are in Huntington.

9          THE DEFENDANT:  Well, I go to the noon meeting.

10          THE COURT:  Is that daily?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  And so, you meet five times a week, is it?

13          THE DEFENDANT:  Basically, yeah, yes.

14          THE COURT:  All right.  Anything else?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  Let me ask whether or not despite the

17  divorce, you and your wife are getting along reasonably well

18  under the circumstances.

19          THE DEFENDANT:  No, sir.

20          THE COURT:  So do you -- is it the case then that you

21  communicate only through your attorneys?

22          THE DEFENDANT:  That's the way it has been.  I think I

23  still have the protective order out against me, and I don't say

24  anything to her and she is not supposed to say anything to me.

25          THE COURT:  And so, you are observing the provisions of

1 | the protective order.

2 |       THE DEFENDANT:  Yes, sir.

3 |       THE COURT:  All right.  The court will expect you, of

4 | course, to continue to do that.  And what is the relationship

5 | between you and your children?

6 |       THE DEFENDANT:  Somewhat, you know, I speak to them

7 | when I can, but my daughter that stays with my ex-wife, she was

8 | a potential witness in this case, and I was told to stay away

9 | from her, but I think now I may be able to get in contact with

10 | her some or whatever.  But the rest of my kids, we have a fairly

11 | decent relationship.

12 |       THE COURT:  And the one who lives with your former wife

13 | is whom?

14 |       THE DEFENDANT:  Yes.  Yes, sir, she is --

15 |       MR. WEIS:  What's her name?

16 |       THE DEFENDANT:  Oh, what's her name, I'm sorry.

17 |       THE COURT:  Is that Megan?

18 |       THE DEFENDANT:  Samantha.

19 |       THE COURT:  Samantha.

20 |       THE DEFENDANT:  Samantha Chester, yes.

21 |       THE COURT:  And does this protective order have

22 | anything to do with Samantha?

23 |       THE DEFENDANT:  No, sir.

24 |       THE COURT:  Only your ex-wife.

25 |       THE DEFENDANT:  Right.

1          THE COURT:  Is there any provision in the protective

2    order about going about the home?

3          THE DEFENDANT:  I don't know if it's really enforced or

4    not.  I just was told to stay away from them by Mr. Weis here

5    and my divorce lawyer until we got this thing resolved, so

6    that's what I'm doing.  I don't know if it's still in effect or

7    not.  I just stay away.

8          THE COURT:  So you are staying away from the home as

9    well.

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right, very good.

12       Let me ask the parties whether or not you have anything

13    further at this time.

14          MR. WEIS:  No, Your Honor.

15          MR. TITUS:  Your Honor, I am just trying to review the

16    order to see what the conditions are regarding contact with

17    witnesses.  If I may have just a moment.

18       Your Honor, paragraph 7(j) provides that the defendant shall

19    avoid all contact, directly or indirectly, with persons who are

20    or who may become a victim or potential witness in the subject

21    investigation or prosecution.  I just want to note that for the

22    court's consideration in connection with the terms and

23    conditions of release.

24          THE COURT:  Well, that's one of the terms of the bond?

25          MR. TITUS:  Yes, Your Honor.

 1          THE COURT:  And so, it's understood that all those

 2   terms continue to be in effect.  The one term that the court was

 3   modifying was to make more strict the provision that will now

 4   provide for the complete abstention from the use of alcohol.

 5          MR. WEIS:  The possible provision which Mr. Chester

 6   just brought up, the question is whether or not, since he has

 7   entered his guilty plea, he may now have some contact with

 8   Samantha.  It would be presumably by telephone; certainly not

 9   around the home.

10          THE COURT:  What's the government's position on the

11   matter?

12          MR. TITUS:  As much as I hesitate to get involved with

13   family relationships and hesitant to say that a father should

14   not be able to see his daughter, I would submit that there is

15   possible issues with -- she may be a witness at the sentencing

16   hearing.  There is always that possibility.  And we think

17   caution at least for the next few months is the best policy.

18          THE COURT:  Anything further on the point?

19          MR. WEIS:  No, Your Honor.

20          THE COURT:  I think under the circumstances, that the

21   court will leave in place the restriction on any witness

22   contact.  And so, I'm not going to give you any relief on that

23   at this time, Mr. Chester.

24       And let me ask the parties if you have anything further.

25          MR. TITUS:  No, Your Honor.

United States v. William Chester                    49

1          MR. WEIS:  No, Your Honor.

2          THE COURT:  We'll stand continued as indicated, and

3     thank you.

4          MR. WEIS:  Thank you.

5          MR. TITUS:  Thank you, Your Honor.

6      (At 2:42 p.m. the hearing was concluded.)

7                        --oOo--

8                  REPORTER'S CERTIFICATE

9       I, Barbara Steinke, Registered Merit Reporter, do hereby
      certify that the foregoing proceedings were reduced to writing
10    by me at the time and place therein mentioned, and said
      proceedings are a true and accurate transcript from my notes.  I
11    further certify that I am neither related to any of the parties
      by blood or marriage, nor do I have any interest in the outcome
12    of the above matter.

13

14    January 30, 2009          s/Barbara Steinke

15

16

17

18

19

20

21

22

23

24

25